Thomas C. **EHRENBURG**, Plaintiff,

v.

**OUTOKUMPU AMERICAN BRASS, INC.;**
United Steelworkers of America, Local
Union No. 593, Defendants.

No. CIV–90–1011C.

United States District Court,
W.D. New York.

Dec. 7, 1992.

---

kumpu American Brass Company ("OAB") and a member of Defendant United Steelworkers of America, Local Union No. 593 ("Union"), filed this hybrid action for breach of contract and breach of the duty of fair representation under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. Plaintiff now moves for summary judgment and defendants crossmove.

## BACKGROUND

Thomas Ehrenburg has been employed by OAB or its predecessor since 1973. In 1986, he applied and was accepted into a new apprenticeship program created by a joint Union/OAB effort to give long-term employees an opportunity for promotion (Item 34, ¶ 6). The program consisted of 8,000 hours (4 years) of on-the-job and classroom training. Ehrenburg completed his apprenticeship and was certified as a journeyman machinist in June 1990.

On July 31, 1990, OAB posted an opening for a day-shift machinist job. The 1986 collective bargaining agreement ("Contract") between OAB and the Union states in pertinent part:

> Among those Employees of a given department, who are qualified to do the work which must be done, Plant-wide Seniority will be the determining factor in promotions to vacancies in higher rated jobs within the Bargaining Unit in that department. . . .

Item 28, Ex. A, Art. V(7).

Both Ehrenburg and Harry McFadden, a Union steward and an experienced journeyman, bid on the job. OAB awarded the job to McFadden despite the fact that Ehrenburg had 17 years of plant-wide seniority at the time of posting and McFadden had only 7 years.

Ehrenburg wrote to the Grievance Committee Chairman Richard Hansen stating that he wanted to file a grievance because he was not given the day-shift machinist job despite his seniority over McFadden in violation of the Contract (Item 28, Ex. C). Hansen conferred with the Union's local president, Jack Williams, and former Griev-

Richard E. Stanton, Buffalo, NY and Thomas E. Webb, Jr., Williamsville, NY, for plaintiff.

Hodgson, Russ, Andrews, Woods & Goodyear (H. Kenneth Schroeder, Jr., of counsel), Buffalo, NY and Baker & Hostetler (John H. Wilharm, Jr., and David G. Holcombe, of counsel), Cleveland, OH, for defendant Outokumpu American Brass, Inc.

E. Joseph Giroux, Jr., Buffalo, NY, for defendant United Steelworkers of America.

CURTIN, District Judge.

Plaintiff Thomas Ehrenburg ("Ehrenburg"), an employee of Defendant Outo-

ance Chairman, Jeff Stearns, and confirmed that OAB had followed the no-first-bid rule in awarding the job (Item 34, ¶¶ 16–17).

The no-first-bid rule was an oral agreement between OAB and the Union prohibiting new journeymen who had just completed the apprenticeship program from trumping the bids of more experienced journeymen. The rule was formulated by OAB and the union at the inception of apprenticeship program in 1986 to address the concerns of experienced journeymen who were essential to the program's success. Because the apprenticeship program was designed to help long-term employees, the journeymen feared that if seniority was plant-wide, as the Contract stipulated, the trainees would be able to outbid their teachers as soon as they became certified. The experienced journeymen wanted to limit seniority in job-bidding to the time of journeyman status. The "no-first-bid" was a compromise (Item 38, pp. 6–7). A new journeyman was precluded from bidding on the first posting of a job after his certification unless no experienced journeyman wanted the job. After this first waiver, plant-wide seniority applied.

Both the Union and OAB claim this rule has been in effect in the plant since the inception of the Apprenticeship Program pursuant to the 1986 Contract and had applied to previous programs (Item 36, ¶ 6, Item 32, Lonie Aff.). There is no mention of the rule in either the Contract or the Apprenticeship Standards (Item 37, Ex. B), but the Union and OAB agree it supersedes both written documents.

The Union states that all apprentices, including Ehrenburg, were informed of the rule upon admission to the program (Item 34, ¶ 10, Item 36, ¶ 8). Therefore, when Hansen replied to Ehrenburg's letter requesting that a grievance be filed, he reminded Ehrenburg that the job-posting procedure had been explained prior to the apprenticeship. He also stated that the Union would not take up the grievance because the company's actions were proper (Item 28, Ex. D).

Ehrenburg denies that he was informed about a "no-first-bid" rule prior to his receipt of Hansen's letter (Item 42, Ex. 1). He has provided affidavits of other journeymen who went through the same or similar apprenticeships at OAB who also deny knowledge of such a rule. He claims that OAB's failure to award him the day-shift machinist job violated the Contract and the terms of the Apprenticeship Standards, and the Union's refusal to grieve OAB's actions constitutes a breach of the duty of fair representation.

## DISCUSSION

Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, provides a "hybrid" cause of action to union members against their employers and unions for breach of contract and the duty of fair representation. Ehrenburg moves for summary judgment against OAB for violating the collective bargaining agreement by rejecting his bid for the day-shift job in favor of a journeyman with 10 years less seniority and against the Union for breaching its duty to represent him fairly by refusing to take up his subsequent grievance against the company. Both OAB and the Union cross-move for summary judgment.

For any of the parties to prevail on a motion for summary judgment, it must be shown that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A material fact is one "that might affect the outcome of the suit under the governing law...." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The inferences drawn from the underlying facts contained in the moving party's materials must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "Uncertainty as to the

true state of any material fact defeats the motion." *United States v. One Tintoretto Painting*, 691 F.2d 603, 606 (2d Cir.1982) (citation omitted).

### 1. *Statute of Limitations*

■ The Union first argues that plaintiff's claim is barred by the statute of limitations, which is six months for Section 301 actions. *DelCostello v. Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). For breach of the duty of fair representation, the cause of action accrues "no later than the time when plaintiffs knew or reasonably should have known that such a breach had occurred, even if some possibility of non-judicial enforcement remained." *Santos v. Carpenters District Council*, 619 F.2d 963, 969 (2d Cir.1980). *See also, Flanigan v. Teamsters Local 671*, 942 F.2d 824 (2d Cir.1991). Defendant asserts that if any breach occurred, it was when the Union agreed with OAB to adopt the no-first-bid rule, an agreement which admittedly modified in limited fashion the plant-wide seniority provisions of the agreement.

The Union argues that the statute of limitations began to run when Ehrenburg knew or reasonably should have known about the oral agreement. The Union asserts that all new apprentices, including Ehrenburg, were informed of the rule at the inception of the Apprenticeship Program but that in any event, accrual should begin no later than when Ehrenburg actually learned of the "no-first-bid" rule. Although Ehrenburg claims in his brief that he was informed of the rule only when he sought to grieve his bid rejection, he admits in his deposition that he became aware of the rule when a friend's bid was similarly rejected in January 1990. This case was not filed until September 25, 1990, eight months later.

Plaintiff counters that the statute of limitations did not begin to run until he learned that the union refused to file his grievance. *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160 (2d Cir.1989). Ehrenburg claims not to have known about the "no-first-bid" rule until he received Hansen's letter but argues that even if he had been aware of the rule, he was not required to anticipate that the Union would refuse to support his grievance based on its interpretation of an oral agreement with OAB.

■ It is more reasonable to mark the accrual of Ehrenburg's cause of action as the date he received the Union's letter of refusal. Ehrenburg is claiming that the Union breached its duty to him personally, not to the class of people discriminated against by the oral agreement. The no-first-bid rule applies only in the very narrow circumstances—when a journeyman who has just completed his apprenticeship competes with a more experienced journeyman on a bid. There has been no evidence presented that the rule had ever been implemented or grieved. Therefore, Ehrenburg could not be expected to anticipate the Union's reaction to his protest, as the Union contends. Since Ehrenburg received the letter from Hansen on August 17, 1990, he was well within the time limits when he filed this suit on September 25, 1990.

### 2. *Failure to State a Claim*

■ Plaintiff has filed a "hybrid" cause of action under section 301. To win summary judgment against both defendants, he must show that there is no genuine issue of fact that: 1) the employer violated the contract in a way that he was injured; *and*, 2) the Union breached its duty to represent him fairly by declining to handle his grievance protesting the contract violation. The two claims are interdependent, and both must be proved. *DelCostello, supra* 462 U.S. at 164–65, 103 S.Ct. at 2290–91; *Teamsters Local 391 v. Terry*, 494 U.S. 558, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990).

Ehrenburg asserts that OAB's award of the machinist job to someone with less seniority was a clear violation of the Contract. He cites the clause governing job bids which states that among employees qualified to do the work, plant-wide seniority will be the determining factor. There is no dispute that he had 10 years more seniority than the successful bidder. He points to the Apprentice Standards to support his contention that, upon completion of

his apprenticeship, he became a journeyman qualified to do the work. He denies knowledge of an oral agreement that would contradict the clear, written language of these documents.

■ Ehrenburg further claims that because OAB violated the contract by awarding the job to McFadden, his grievance was meritorious and the Union breached its duty when it refused to represent him on this matter. A union will breach its duty of fair representation if its conduct is arbitrary, discriminatory, or in bad faith. *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967). Ehrenburg argues that the Union arbitrarily refused to file his grievance even though it was meritorious. He also suggests that there may have been bad faith involved in the Union's decision because the successful bidder, Harry McFadden, was a Union steward, but argues that because the Union's refusal was arbitrary, no bad faith needs to be proved. An arbitrary or irrational refusal to represent a member may breach the duty of fair representation even in the absence of bad faith or ill will. *N.L.R.B. v. Local 282, I.B.T.,* 740 F.2d 141, 147 (2d Cir.1984).

Both defendants in this case are cross-moving for summary judgment. They claim that the plaintiff has failed to satisfy the two-prong burden of proof of contract violation and Union breach, thereby failing to state a claim for which relief may be granted under Section 301.

The arguments of both OAB and the Union rest mainly on the existence of their oral "no-first-bid" agreement. They argue that OAB's decision not to award the machinist job to Ehrenburg was proper, given the existence of the agreement. Even though the agreement was oral, both defendants contend that the court must find it incorporated into the Contract, because there is no dispute between them that the rule was operative at the time Ehrenburg placed his bid. OAB further asserts that whether Ehrenburg knew of the rule is not relevant to a determination of contract violation on the part of the employer (Item 32, pp. 18–19).

Both defendants also argue that the Union's decision not to process Ehrenburg's grievance was not a breach of its duty to represent its membership fairly, based on the existence of the same oral agreement. An individual employee does not have an absolute right to have his grievance processed. *Vaca, supra* 386 U.S. at 191, 87 S.Ct. at 917. The defendants deny that the union's refusal to file Ehrenburg's was arbitrary. Hansen, the grievance chairman, evaluated Ehrenburg's claim in light of the "no-first-bid" agreement. He checked with both the local president and his predecessor to confirm that the agreement was in effect. Based on his understanding of the agreement in consultation with other union representatives, Hansen determined that Ehrenburg's grievance had no merit and informed him that the Union would not proceed with it.

The Union asserts that even assuming *arguendo* that the application of the "no-first-bid" rule to Ehrenburg's case was an error of judgment or interpretation, there is no breach of the duty of fair representation absent proof of bad faith or arbitrariness. "A union's conduct may not be deemed arbitrary simply because of an error in evaluating the merits of a grievance [or] in interpreting particular provisions of a collective bargaining agreement...." *Peterson v. Kennedy,* 771 F.2d 1244, 1254 (9th Cir.1985), *cert. denied,* 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986). *See also, Hines v. Anchor Motor Freight,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976). Nor would mere negligence in enforcement of the Contract rise to the level of a breach. *Steelworkers v. Rawson,* 495 U.S. 362, 110 S.Ct. 1904, 109 L.Ed.2d 362 (1990).

Moreover, both OAB and the Union assert that the oral agreement itself was not arbitrary. Rather, it was a rational compromise between two competing interests within the bargaining unit. Courts historically have granted unions wide latitude to negotiate such compromises, even when some parties are adversely affected, so long as decisions are made without hostility, discriminatory intent, or bad faith. *Air*

*Line Pilots Ass'n Intl. v. O'Neill,* — U.S. —, 111 S.Ct. 1127, 113 L.Ed.2d 51 (1991).

■ The existence and application of the oral "no-first-bid" rule is a material issue of fact that precludes summary judgment in this case. If there was no dispute that the agreement was a valid part of the Contract and was operative at the time Ehrenburg bid on the machinist job, there would be no material issue of fact that OAB did not violate the Contract. Moreover, the Union's failure to process Ehrenburg's grievance could not be categorized as a breach of its duty because its decision that the grievance was not meritorious would clearly not be arbitrary, discriminatory, or in bad faith. The Union and OAB would be entitled to summary judgment.

■ Absent a viable oral agreement, however, Ehrenburg has stated a valid claim. Without an agreement restricting the first bids of new journeymen, OAB's refusal to award Ehrenburg's bid was a Contract violation and the Union's subsequent failure to process his grievance a possible breach of its duty of fair representation. There is no dispute that plant-wide seniority is the determining factor in awarding jobs among otherwise equally qualified bidders. The Apprenticeship Standards identify apprentices who have completed the program as journeymen qualified to do the work. Ehrenburg had the most plant-wide seniority of those who bid on the machinist job, and he was qualified as a journeyman. Without the oral agreement, Ehrenburg would have been entitled to the job.

By the same token, Ehrenburg's grievance would be meritorious. A union's negligent or perfunctory treatment of a meritorious grievance does not automatically rise to the level of a breach of the duty of fair representation. (*Rawson, supra* 495 U.S. at 372–73, 110 S.Ct. at 1911, *Barr v. United Parcel Service, Inc.,* 868 F.2d 36, 43 (2d Cir.1989), *cert. denied,* 493 U.S. 975, 110 S.Ct. 499, 107 L.Ed.2d 502 (1989).) Without the explanation of the no-first-bid rule, however, the Union's refusal to take up Ehrenburg's grievance would appear more egregious than a tactical error or mere negligence (*Barr, supra* at 43), and could be found "so far outside a wide range of reasonableness as to be irrational." *Air Line Pilots Assn., supra* — U.S. at —, 111 S.Ct. at 1130.

Viewing all the evidence presented in the light most favorable to the nonmoving party, the court finds that Ehrenburg has stated a claim against both the Union and OAB. The obstacle to withstanding summary judgment on this issue is the application of the oral agreement. Ehrenburg has produced 5 affidavits from co-workers who either participated in the same Apprenticeship Program with him or had previously completed their apprenticeships and were presumably working as journeymen while Ehrenburg was an apprentice (Item 42, Exs. 3–7). None of these co-workers knew of the existence of the "no-first-bid" rule. Moreover, there is no evidence that any other new journeyman has ever been refused his first bid.

The Union and OAB assert that the agreement existed at the inception of the apprenticeship program and that all apprentices were informed of the "no-first-bid" at the start of their apprenticeship. They have produced affidavits by local union leaders and the company director affirming the existence of the agreement and the apprentices' knowledge of it (Item 34, ¶ 9; Item 36, ¶ 6; Item 32, Lonie Aff.). Therefore, a genuine issue of fact remains on the rule's applicability to Ehrenburg's claim.

### 3. *Admission of Parol Evidence*

■ In his reply memorandum, Ehrenburg urges that he is nevertheless entitled to summary judgment because evidence of an oral agreement superseding the plain language of the Contract should not be permitted under the parol evidence rule. Ehrenburg argues that the defendants' reliance on an oral agreement to justify their actions is misplaced. Parol evidence may only be used in contract interpretation when the language of the contract is ambiguous and reasonably susceptible of more than one interpretation. *Burger King Corp. v. Horn & Hardart Co.,* 893

F.2d 525, 527 (2d Cir.1990). The Contract states that plantwide seniority will be the deciding factor in awarding a job when more than one qualified employee has bid on it (Item 28, Ex.A, Art. V), and the Apprentice Standards define a journeyman as one who has satisfactorily completed the Apprenticeship Program (Item 32, Ex.B, Art. X). Ehrenburg asserts that because the language in these written agreements is unambiguous, the defendants cannot introduce parol evidence of an oral agreement to interpret the Contract and Standards to include the "no-first-bid" rule.

Ehrenburg further contends that OAB and the Union were prohibited from making changes in the Apprenticeship Standards without his written consent. Article XIII reads:

> These Standards of Apprenticeship may be amended or new schedules added at any time upon mutual agreement of the Company and the Union, providing that no such change or amendment shall alter an Apprenticeship Agreement in force at the time of such change without written consent of the apprentice; and providing such change or amendment shall be submitted to the Registration Agencies. A copy of such amendment will be furnished to each apprentice and the Union by the Company.

The Plaintiff insists that he was never informed of the oral agreement and never asked to sign a written consent to such a change.

OAB counters that the restriction on parol evidence in commercial contract law does not extend to labor contracts, which are governed by more flexible federal labor law policy. The proper interpretation of a labor contract "is not confined to the express provisions of the contract, as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581–82, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960). Federal courts have consistently included evidence outside the parameters of the written agreement, including oral agreements, in interpreting collective bargaining agreements under federal labor law. *See, e.g., Marine Transport Lines, Inc. v. Int'l. Organization of Masters, Mates & Pilots*, 878 F.2d 41 (2d Cir.1989), *cert. denied*, 493 U.S. 1022, 110 S.Ct. 724, 107 L.Ed.2d 743 (1990).

OAB argues that even if this court were to apply the parol evidence rule, evidence of the oral "no-first-bid" agreement would be admissible, because the Contract clauses are not unambiguous. The Contract states that plant-wide seniority is the determining factor in awarding a job bid "[a]mong those employees of a given department, who are qualified to do the work which must be done." (Item 28, Ex.A, Art. V(7).) OAB argues that neither the Contract nor the Apprenticeship Standards establish when apprentices are considered "employees of a given department" nor when they become "qualified to do the work which must be done." The oral "no-first-bid rule may be viewed either as a clarification of this language or as an additional term to the agreement (Item 45, pp. 6–7). OAB contends that parol evidence is admissible in either case. *Marine Transport, supra* at 42.

## CONCLUSION

The flexibility of federal labor law permits this court to consider oral agreements between OAB and the Union within the context of the overall labor-management agreement package. If there were no dispute that the oral agreement exists and was widely known within the plant both workers and supervisors, plaintiff's lack of knowledge of the agreement would be the same as his lack of knowledge about a provision in the contract—he would still be governed by it. But it follows that an oral agreement must be widely acknowledged to become part of a collective bargaining relationship. The union and management could not make a secret agreement not to abide by certain provisions of the Contract and then offer evidence of such agreement to defeat a suit for breach of contract/duty of fair representation.

*Merk v. Jewel Food Stores,* 945 F.2d 889 (7th Cir.1991).

Ehrenburg does not allege that the Union and OAB have deliberately kept the "no-first-bid" rule secret. However, he has produced enough evidence casting doubt about its existence, incorporation, and application to raise a material issue of fact. Therefore, summary judgment is denied to plaintiff and both defendants.

The court will hold a telephone conference on December 16, 1992, at 2 p.m. with the attorneys to fix a further schedule. Buffalo counsel shall attend in chambers.

So ordered.