**IRON WORKERS DISTRICT COUNCIL OF WESTERN NEW YORK AND VICINITY WELFARE AND PENSION FUNDS, et al., Plaintiffs,**

v.

**BUTLER FENCE CO., INC., Defendant.**

**Civil A. No. 93–CV–467.**

United States District Court,
N.D. New York.

March 19, 1996.

590

Blitman & King, Syracuse, NY, for Plaintiffs (Jennifer A. Clark, of counsel).

Bond, Schoeneck & King, L.L.P., Syracuse, NY, for Defendant, (Thomas G. Eron, of counsel).

## MEMORANDUM–DECISION
## AND ORDER

POOLER, District Judge.

### INTRODUCTION

In this lawsuit under the Employee Retirement Income Security Act ("ERISA") and the Labor Management Relations Act ("LMRA"), plaintiffs Iron Workers District Council of Western New York and Vicinity Welfare and Pension Funds, et al. ("Iron Workers Fund") move for partial summary judgment against defendant Butler Fence Co., Inc. ("Butler"). Plaintiffs also seek an order compelling Butler to produce documents relating to the earnings of its employees. Because issues of fact control virtually every aspect of this case, summary judgment is denied. In addition, I deny plaintiffs' motion to compel discovery without prejudice to its renewal before the magistrate judge.

### BACKGROUND

Butler is a Syracuse company that employs approximately 20 people full-time in the installation of commercial and residential fences. According to Neil R. Austin, Butler's president, the company occasionally employs workers who are members of the Iron Workers Local Union No. 60 (the "union") for specific jobs at the request of the project's general contractor, the property owner, or a union representative. Austin Aff. of 1/6/95, ¶ 9. Butler's full-time employees, however, are not union members. Iron Workers Fund administers fringe benefit plans for the benefit of union members. According to Austin, when Butler occasionally employed union workers, the company paid them at the current union wage rate and made fringe benefit contributions on their behalf to Iron Workers Fund. *Id.*

### A. Collective bargaining agreements

The union and the Construction Employers Association of Central New York ("Construction Association") negotiated collective bargaining agreements in 1983, 1986 and 1989 for the benefit of union workers. Butler is not a member of the Construction Association. The collective bargaining agreements require employers to contribute to Iron Workers Fund on behalf of union workers in amounts correlating to the number of hours worked. *See* Pl. Rule 7.1(f) Statement, Ex. A ("1983 Agreement"), Art. 9a & 9b; Ex. B ("1986 Agreement"), Art. 9a & 9b. Butler signed the 1983 and 1986 collective bargaining agreements as an individual employer but did not sign the 1989 agreement. Austin Aff. of 1/6/95, ¶ 10.

The parties sharply dispute the circumstances under which Butler signed the 1986 Agreement, which is central to this lawsuit. Butler President Austin contends that he signed the 1986 Agreement because union business agent Ronald McDermott visited Butler's offices and told Austin that the 1986 Agreement would cover only work related to a then current project along Route 81 in Mattydale. Austin Aff. of 1/6/95, ¶ 6. Two Butler employees who were in the office during Ronald McDermott's 1986 visit generally corroborate Austin's version of events. Froio Aff. of 1/6/95, ¶ 2; Singer Aff. of 1/6/95, ¶ 2. In contrast, union officials deny ever stating that the 1986 Agreement was a limited project agreement. Ronald McDermott claims that his brother, union President Kevin McDermott, obtained Austin's signature on the 1986 Agreement and that neither the 1983 Agreement nor the 1986 Agreement was limited to the Route 81 project. R. McDermott Aff. of 12/13/94, ¶¶ 5, 8–9. Kevin McDermott contends that he was present when Austin signed the 1986 Agreement and that he told Austin the 1986 Agreement was not limited to the Route 81 project. K. McDermott Aff. of 12/13/94, ¶¶ 6–7. The 1986 Agreement itself does not limit its application to the Route 81 project.

The parties also dispute the termination date of the 1986 Agreement. Iron Workers

Fund argues that the contract automatically renewed itself and was effective through May 31, 1992, which is four months after Butler submitted a written termination notice. *See* 1986 Agreement, Art. 54. Butler acknowledges sending a termination letter to the union on January 24, 1992. Austin Aff. of 1/6/95, ¶ 17 & Ex. B. However, the letter clearly states that Butler made the termination without waiving its argument that the 1986 Agreement was a project agreement limited to the Route 81 project. *Id.* Ex. B.

## B. Audits by Iron Workers Fund

The scope and termination date of the 1986 Agreement determines the extent of any fringe benefit contributions Butler owes Iron Workers Funds. Both the 1983 and 1986 agreements between the union and Butler incorporate Iron Workers Fund's trust agreements, which permit the fund to audit the books of contributing employers. *See, e.g.,* Pl. Rule 7.1(f) Statement, Ex. F, Art. 9, § 1. Under this authority, Iron Workers Fund audited Butler's records for several projects during the period August 1985 through May 1989. According to this audit, Butler owed Iron Workers Fund $3,545.62. *Id.* Ex. N. By letter dated December 5, 1989, plaintiffs demanded payment from Butler of $5,364.16, which covered the delinquent contributions and applicable interest and penalties. Austin Aff. of 1/6/95, Ex. A. Butler never paid the alleged debt.

The union also audited Butler's records for the period March 1985 through February 1986 and determined that Butler owed $122,168 in delinquent fringe benefit contributions.[1] By letter dated July 15, 1991, Iron Workers Fund demanded payment from Butler of $264,405.81, which included the delinquent contributions, interest and penalties. Pl. Rule 7.1(f) Statement, Ex. Q. According to plaintiffs, this audit did not include 16 projects for which they requested additional information. *Id.* Butler never supplied the information, and Iron Workers Fund has not audited Butler's records for the period March 1986 through May 1992.

Iron Workers Fund commenced this lawsuit on November 30, 1992, to, among other things, collect the delinquent fringe benefit contributions already calculated and to compel Butler to produce its records for another audit.[2] Butler filed a counterclaim against the union stating that it fraudulently induced Butler to sign the 1986 Agreement and seeking indemnification if Butler was found liable under the contract for fringe benefit contributions. During discovery, Iron Workers Fund requested Butler's records in order to compute additional delinquent contributions. Butler refused the request. Although the parties met with Magistrate Judge Gustave J. Di Bianco regarding their dispute, he never ruled on the matter.

Plaintiffs now seek to compel Butler to produce its books and records for discovery. Iron Workers Fund also seeks summary judgment regarding its right to audit Butler's records and Butler's obligation to pay the funds delinquent contributions. Finally, plaintiffs seek to dismiss Butler's counterclaim against the union. Butler opposed the motions in all respects. Oral argument took place on February 6, 1995.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment shall enter if, when viewing the evidence in the light most favorable to the nonmovant, the court determines that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Eastman Kodak Co. v. Image Technical Servs., Inc.,* 504 U.S. 451, 456, 112 S.Ct. 2072, 2076, 119 L.Ed.2d 265 (1992). A party seeking summary judgment must demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If the movant satisfies this initial burden,

---

**1.** Iron Workers Fund claims that Butler permitted this audit to settle a grievance the union filed in June 1990 against Butler. Pl. Rule 7.1(f) Statement, Ex. O. Defendant contends that the audit was not part of a settlement and that the union abandoned its grievance.

**2.** Plaintiffs originally filed their complaint in U.S. District Court for the Western District of New York, and the parties agreed to transfer the action to the Northern District of New York.

then the burden shifts to the nonmovant to proffer evidence demonstrating that a trial is required because a disputed issue of fact exists. *Weg v. Macchiarola,* 995 F.2d 15, 18 (2d Cir.1993). The nonmovant must do more than present evidence that is merely colorable, conclusory, or speculative and must present "concrete evidence from which a reasonable juror could return a verdict in his favor...." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The nonmovant must do more than show "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986).

## II. Scope of the 1986 Agreement

The chief dispute between Iron Workers Fund and Butler is whether Butler paid all of the fringe benefit contributions it owed, and resolution of this dispute depends upon the scope of the 1986 Agreement. If the 1986 Agreement was a project agreement covering only the Route 81 project, as Butler contends, then the employer has satisfied its contribution obligation. However, if the 1986 Agreement was a collective bargaining agreement covering all projects through May 31, 1992, as plaintiffs contend, then Butler owes delinquent contributions, although the amount of that liability is undetermined.

### A. Oral modification

■ Butler contends that it does not owe additional contributions to Iron Workers Fund because the 1986 Agreement was limited to work performed on the Route 81 project. Butler relies on the terms of an oral modification to the written contract. In addition to denying the existence of the oral limitation, Iron Workers Fund responds that the contract terms could not be so modified. Plaintiffs argue that they are entitled to rely on the contract's written terms and that Butler's contract defenses against the union, if any, are ineffective against the fringe benefit fund.

By its terms, the 1986 Agreement remained in effect through May 31, 1989, and extended automatically for one-year increments if neither party gave written termination notice. 1986 Agreement, Art. 54. The contract did not limit its application to a single project. In an article of the contract entitled "Craft Jurisdiction," the 1986 Agreement states that "the jurisdiction of work covered by this Agreement is that provided for in the [union's] charter grant." *Id.* Art. 1. In addition, the contract stated that "[t]his Agreement contains all of the provisions agreed upon by the Employer and the Union. Neither the Employer nor the Union will be bound by rules, regulations or agreements not herein contained except interpretations or decisions of the Board of Arbitration." *Id.* Art. 52.[3]

■ There is no requirement that a collective bargaining agreement be written. *American Fed'n of Television & Radio Artists v. Inner City Broadcasting Corp.,* 748 F.2d 884, 887 (2d Cir.1984). Technical rules of contract do not determine whether a collective bargaining agreement is formed. *Id.* at 886–87. Federal labor law is flexible enough to permit courts to consider oral agreements "within the context of the overall labor-management agreement package." *Ehrenburg v. Outokumpu Am. Brass, Inc.,* 808 F.Supp. 973, 980 (W.D.N.Y.1992). Like any contract, however, a collective bargaining agreement is completely integrated if the parties intend it to be the expression of their entire agreement, and under these circumstances evidence of contemporaneous oral modifications is inadmissible. *Merk v. Jewel Food Stores,* 945 F.2d 889, 892–93 (7th Cir. 1991), *cert. denied,* 504 U.S. 914, 112 S.Ct. 1951, 118 L.Ed.2d 555 (1992). However, if the parties intend the writing to be a final expression of the written terms but not a complete expression of all the necessary terms, then the writing is partially integrated and parol evidence of additional consistent terms is admissible. *Id.* Whether a writing is integrated is a question of law. *Id.* at 893.

---

**3.** The parties also signed a short-form contract that automatically incorporated into the 1986 Agreement any changes in fringe benefits negoti-

ated by the union and Construction Association. *Id.*

■ Thus, certain oral modifications to collective bargaining agreements are permissible. For example, in a case involving an expired collective bargaining agreement, the Second Circuit held that conflicting evidence raised an issue of fact as to whether the parties orally agreed to extend the effective date of their contract pending further negotiations. *Local 74, Serv. Employees Int'l Union v. Ecclesiastical Maintenance Serv., Inc.,* 55 F.3d 105, 108–09 (2d Cir.1995). Similarly, a district court found that conflicting evidence raised an issue of fact as to whether an employer and union orally agreed to modify the terms of their existing collective bargaining agreement to alter the seniority rights of some journeymen. *Ehrenburg,* 808 F.Supp. at 979–80.

I reject plaintiffs' contention that the 1986 Agreement's terms as a matter of law did not permit any oral modifications. The 1986 Agreement contains an integration clause at Article 52, but it does not explicitly state that all modifications must be in writing. Thus, the contract itself does not prohibit oral modifications, and I must look to the intentions of the parties to determine whether the alleged modifications were effective. *See Ecclesiastical Maintenance,* 55 F.3d at 109. Examination of the parties' intent is a question of fact. *Marine Transport Lines, Inc. v. International Org. of Masters, Mates & Pilots,* 878 F.2d 41, 44 (2d Cir.1989), *cert. denied,* 493 U.S. 1022, 110 S.Ct. 724, 107 L.Ed.2d 743 (1990).

Furthermore, it is undisputed that Butler and the union orally modified the terms of the 1986 Agreement to apply only to Butler's commercial projects and not its residential projects. Eron Aff. of 1/6/95, Ex. A, R. McDermott Dep. of 4/12/94, at 85; *Id.* Ex. B,

K. McDermott Dep. of 9/29/94, at 30, 77. Union officials Kevin and Ron McDermott each admitted during their depositions that the express contract terms did not include this change. *Id.* Thus, it is inconsistent for plaintiffs to assert that the alleged modification regarding the Route 81 project is impermissible when the union itself endorsed a different oral modification regarding the scope of the contract. A term limiting the contract's scope to the Route 81 project is not inconsistent with Article 1 of the contract, which merely states that work by union members is within the "jurisdiction" of the agreement. As discussed above, Iron Workers Fund and Butler sharply dispute both the content and the effect of discussions between Austin and union officials when Austin signed the 1986 Agreement. These disputes raise issues of fact precluding summary judgment.[4]

■ Iron Workers Fund next argues that oral contract modifications bind the union but not the fringe benefit fund. Plaintiffs state that if Butler ultimately proves that the 1986 Agreement was limited to the Route 81 project, then its appropriate remedy is to seek reimbursement. Pursuant to Section 1145 of ERISA, every employer that is obligated to make fringe benefit contributions must do so in accordance with the terms of relevant collective bargaining agreements and trust agreements.[5] 29 U.S.C. § 1145. Section 1145 limits the defenses available to an employer against a fringe benefit fund, so that ordinary contract defenses like fraudulent inducement and abandonment will not defeat a fund's rights under the agreement. *Benson v. Brower's Moving & Storage, Inc.,* 907 F.2d 310, 314 (2d Cir.), *cert. denied,* 498

---

4. Because my decision is based on the terms of the contract itself, I do not address the parties' arguments regarding their course of conduct, although the parties' conduct can be circumstantial proof of an agreement to modify a contract. *See Marine Transport,* 878 F.2d at 45. I note only that the evidence regarding the parties' conduct—such as the scope of audits of Butler's business records, the union's provision of workers for projects other than the Route 81 project, and Butler President Austin's stated belief that the 1983 Agreement covered only the Route 81 project—also raises issues of fact regarding the scope of the 1986 Agreement.

5. Section 1145 provides:

Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.
29 U.S.C. § 1145.

U.S. 982, 111 S.Ct. 511, 112 L.Ed.2d 524 (1990). Because of Section 1145, "once an employer knowingly signs an agreement that requires him to contribute to an employee benefit plan, he may not escape his obligation by raising defenses that call into question the union's ability to enforce the contract as a whole." *Id.* See also *Southwest Adm'r, Inc. v. Rozay's Transfer,* 791 F.2d 769, 775 (9th Cir.1986) (*en banc*), *cert. denied,* 479 U.S. 1065, 107 S.Ct. 951, 93 L.Ed.2d 999 (1987).

However, Section 1145 does not limit Butler's defense to this lawsuit because defendant's argument concerns the 1986 Agreement's terms rather than any defects in its formation or execution. Thus, if the oral modification regarding the Route 81 project was effective, then the fund is "not entitled to enforce a nonexistent contractual obligation" regarding other projects. *DeVito v. Hempstead China Shop, Inc.,* 38 F.3d 651, 654 (2d Cir.1994) (quotation and citation omitted). *See also Sheet Metal Workers' Int'l Ass'n, Local 206 v. West Coast Sheet Metal Co.,* 954 F.2d 1506, 1509–10 (9th Cir.1992) (holding that employer not obligated to contribute to fringe benefit fund after union was decertified because collective bargaining agreement became inoperative and had no force or legal effect).

In *Benson,* the Second Circuit rejected an employer's defense that the union had abandoned the collective bargaining agreement because the fringe benefit fund could rely on the written contract terms. *Benson,* 907 F.2d at 316. However, the Second Circuit subsequently drew a distinction between defenses that call into question the union's ability to enforce the contract as a whole and a claim that the contract by its terms does not require the employer to make contributions. *DeVito,* 38 F.3d at 653–54. An employer can make the latter claim even against a fringe benefit fund. *Id.* at 654; *see also Teamsters Indus. Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc.,* 989 F.2d 132, 138 (3d Cir.1993).

I decline to follow the distinguishable cases Iron Workers Fund cites in support of its argument that any alleged oral modifications to the 1986 Agreement are ineffective. In a Seventh Circuit case, the court declined to enforce an oral promise that directly contradicted the written terms of a collective bargaining agreement. *Central States, Southeast and Southwest Areas Pension Fund v. Gerber Truck Serv., Inc.,* 870 F.2d 1148, 1155–56 (7th Cir.1989) (en banc). In a Ninth Circuit case, the court stated that it was bound by circuit precedent to disregard a credible oral agreement between the parties and to "support[ ] unions when they impose hidden, burdensome obligations on small employers who have little or no bargaining power." *Operating Eng'r Pension Trust v. Giorgi,* 788 F.2d 620, 622–23 (9th Cir.1986). Second Circuit precedent does not compel a similar result. It is a question of fact whether Butler and the union agreed to the oral modification, which does not contradict express terms of the 1986 Agreement.

Thus, although Butler clearly signed the 1986 Agreement incorporating the terms of trust agreements, it is an issue of fact whether the parties orally modified the contract's terms to limit its application to the Route 81 project. Because the parties made an undisputed oral modification of the contract to limit its scope to commercial projects, an additional oral modification is plausible in light of the conflicting evidence. Contrary to plaintiffs' contention, Butler's argument on this issue is not a fraudulent inducement defense, which I agree would be ineffective against Iron Workers Fund. Rather, defendant's argument is a permissible defense concerning the terms of the agreement itself.

## B. Automatic Renewal

Butler also contends that the automatic renewal provision in the 1986 Agreement is invalid and ineffective. Because the oral modification regarding the contract's scope is a disputed issue of fact, it also is an issue of fact whether the automatic renewal provision could apply in this case. I therefore need not address the parties' arguments regarding the legal effect of the automatic renewal provision.

## C. Conclusion

I find as a matter of law that the 1986 Agreement was not fully integrated. An issue of fact exists regarding whether the parties intended to orally modify the contract to

apply only to the Route 81 project. Thus, I cannot determine as a matter of law the scope of the 1986 Agreement, including its termination date. I therefore deny plaintiffs' motion for summary judgment regarding Butler's obligation to make additional fringe benefit fund contributions and plaintiffs' right to conduct additional audits of Butler's records.

### III. Counterclaim for fraudulent inducement

■ In the event that Butler is liable to Iron Workers Fund for delinquent fringe benefit contributions, defendant seeks indemnity from the union for fraudulently inducing Butler to sign the 1986 Agreement. Plaintiffs contend that Butler's counterclaim against the union must be dismissed as a matter of law because ERISA preempts it and because Butler failed to state a prima facie case. Neither argument has merit.

ERISA preemption is irrelevant to Butler's counterclaim against the union, which is governed by the LMRA. 29 U.S.C. § 185(a). Plaintiffs incorrectly state that Butler's counterclaim is governed by federal common law under ERISA, citing *In re Masters Mates & Pilots Pension Plan and IRAP Litigation*, 957 F.2d 1020 (2d Cir.1992). In that case, the court considered a settlement affecting in part the indemnity rights of an ERISA plan trustee. *Id.* at 1029, 1032. However, Butler's counterclaim for indemnity is against the union, not Iron Workers Fund. Ans. ¶ 39. Thus, the counterclaim does not implicate ERISA even though the amount of money for which Butler seeks indemnity is the equivalent of its delinquent ERISA contributions. *See Rozay's Transfer v. Local Freight Drivers, Local 208*, 850 F.2d 1321, 1325–26 (9th Cir.1988), *cert. denied*, 490 U.S. 1030, 109 S.Ct. 1768, 104 L.Ed.2d 203 (1989) (allowing fraudulent inducement claim by employer against union for amount of delinquent ERISA contributions).

■ In addition, I find that Butler stated a prima facie case of fraudulent inducement. Butler ultimately must prove

that the union knowingly made a material false representation concerning an existing fact with an intent to defraud the employer and that Butler reasonably relied on the misrepresentation to its detriment. *See Cement and Concrete Workers Dist. Council v. Lollo*, 35 F.3d 29, 33 (2d Cir.1994); *see also Rozay's Transfer*, 850 F.2d at 1326. Butler claims to have signed the 1986 Agreement in reliance on the union's fraudulent misrepresentation that the contract covered only the Route 81 project. Ans. ¶ 38. Recovery is not barred even if Butler was negligent in relying upon the union's misrepresentations. *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 278 (2d Cir.1992).

It is a question of fact whether the union made the alleged fraudulent misrepresentations to Butler. Both parties submitted conflicting evidence regarding the conversations that took place between union officials and Butler President Austin at the time Austin signed the 1986 Agreement. This evidence concerns not only the fact of the alleged misrepresentation but also the knowledge and intent of the union officials. Plaintiffs argue that the alleged misrepresentation concerns a legal consequence of the contract's terms rather than a material fact. I disagree. As discussed in Section II of this opinion, it is a question of fact whether the union made oral modifications to the terms of the contract itself.[6] *Cf. Rozay's Transfer*, 850 F.2d at 1328 (holding that fraudulent inducement claim existed where union's oral misrepresentation was contrary to contract's express terms). Plaintiffs also contend that Butler did not rely on the misrepresentation to its detriment because it received the benefit of union workers. However, unforeseen liability for benefit fund contributions constitutes recoverable damages. *Id.* I reject the remainder of plaintiffs' arguments because they invite me to draw factual inferences adverse to the nonmovant defendant. Consequently, plaintiffs' motion to dismiss Butler's counterclaim is denied.

---

**6.** The existence of an undisputed oral contract modification limiting the 1986 Agreement to commercial projects further supports my conclu-

sion that the existence of the disputed Route 81 project limitation is an issue of fact.

## IV. Discovery motion.

In their April 13, 1993, request for production of documents, plaintiffs sought, among other things, all of Butler's payroll records, ledgers, W–2 forms, and individuals' earnings records from 1986 to the present. Clark Aff. of 12/13/94, Ex. G, at 4–6. Iron Workers Fund claims that these documents are relevant to determining whether Butler owes additional delinquent contributions, and if so, how much. Butler contends that the requested materials are irrelevant because they cover a period during which no collective bargaining agreement was in effect and that Iron Workers Fund already has conducted audits for periods during which Butler may have had any obligation to contribute to the fringe benefit fund. In the alternative, Butler seeks certain limitations on the scope of the plaintiffs' discovery request.

The parties brought their discovery dispute to the district court without first receiving a ruling from the magistrate judge. The record shows that the parties discussed their dispute with the magistrate on several occasions. On March 14, 1994, the parties conducted a telephone conference with Magistrate Judge Di Bianco in which he declined to rule on the discovery issue. According to the conference notes, the "[p]arties [were] to schedule another telephone conference if they believe[d] case should go forward without resolution of the 'threshold issue.'" Dkt. No. 20. This threshold issue is the scope of the 1986 Agreement. On September 22, 1994, Magistrate Judge Di Bianco filed an order extending the time for conducting discovery and filing motions. Dkt. No. 24. However, he never ruled on the discovery dispute. Rather than make the initial determination on this issue, I deny plaintiffs' motion without prejudice to renewal before the magistrate judge. My ruling that the 1986 Agreement's scope is an issue of fact will have some bearing on the magistrate judge's decision.

### CONCLUSION

For the foregoing reasons, plaintiffs' summary judgment motion is denied. In addition, I deny plaintiffs' motion to dismiss Butler's counterclaim against the union. Finally, I deny without prejudice to renewal before the magistrate plaintiffs' motion to compel discovery.

IT IS SO ORDERED.