**LOCAL 74, SERVICE EMPLOYEES INTERNATIONAL UNION, AFL–CIO, Plaintiff–Appellant,**

v.

**ECCLESIASTICAL MAINTENANCE SERVICES, INC., Defendant–Appellee.**

No. 1009, Docket 94–7776.

United States Court of Appeals, Second Circuit.

Argued Feb. 23, 1995.

Decided May 22, 1995.

Ira A. Sturm, Manning, Raab, Dealy & Sturm, New York City, for plaintiff-appellant.

Richard M. Reice, New York City (Eugene T. D'Ablemont, Kelley Drye & Warren, New York City, on the brief), for defendant-appellee.

Before: NEWMAN, Chief Judge, VAN GRAAFEILAND and COFFIN,* Circuit Judges.

JON O. NEWMAN, Chief Judge:

This appeal concerns the arbitrability of an employee discharge that occurred after the expiration of a collective bargaining agreement ("CBA") between the employer and the union. Plaintiff-appellant Local 74, Service Employees International Union ("Local 74"), appeals from the July 26, 1994, judgment of the District Court for the Southern District of New York (John S. Martin, Judge) denying its application for an order compelling arbitration and granting defendant-appellee Ecclesiastical Maintenance's ("EMS"'s) motion for summary judgment. The District Court concluded that the employee discharge grievance was non-arbitrable because the CBA was no longer in effect. We hold that Local 74 raised a genuine issue of material fact regarding the existence of an oral agreement between the union and EMS to extend all terms of the expired CBA, including its arbitration provision, pending resolution of negotiations over a new CBA. Consequently, we vacate the judgment and remand for further proceedings.

## Background

EMS provides contract building cleaning and maintenance services to schools affiliated with the New York Catholic Archdiocese. Local 74 is the duly recognized representative of the EMS employees in a unit including all regular full time and regular part-time maintenance, service, grounds, and custodial employees employed by EMS, exclusive of executives, supervisory employees, confiden-

---

* The Honorable Frank M. Coffin of the United States Court of Appeals for the First Circuit, sitting by designation.

tial employees, and office and clerical employees.

In March 1991, EMS and Local 74 entered into a renewal CBA, which set forth the then current wages, hours, and terms and conditions of employment of the employees of EMS employed in the unit. That agreement was to continue in full force and effect until March 2, 1992. More than 60 days prior to March 2, 1992, Local 74, pursuant to Article XIX of the CBA, notified EMS of its desire to amend the CBA. Negotiations for a new CBA commenced in the middle of February. EMS offered a three-year contract consisting of the *status quo* as to wages and conditions of employment in the first contract year, and a reopener at the beginning of the second and third contract years on all economic matters. Local 74 rejected this offer because of the union's objections to a wage freeze.

On March 25, 1993, Local 74 served on EMS (1) a writing putting EMS on notice that Local 74 reserved its right to engage in an immediate job action against the Archdiocese by reason of the impasse of over one year in bargaining for a new contract, and (2) a writing from Local 74 to its international union asking for immediate strike authorization against the Archdiocese. On March 26, 1993, EMS discharged Foster Hutton for theft based on falsifying time sheets. On March 18, 1994, EMS agreed to allow Local 74 to submit Hutton's grievance to arbitration. Local 74 arranged for this arbitration, and the hearing was scheduled for April 27, 1994. The day before the scheduled hearing, Local 74 rejected EMS's latest contract offer, and EMS's counsel then notified Local 74 that EMS would contest the arbitrability of Hutton's grievance.

Local 74 filed a complaint in the District Court to compel arbitration, seeking a declaration of the validity and enforceability of the arbitration clause of the CBA. EMS moved for summary judgment to dismiss the complaint.

Local 74 opposed the motion on the ground that the parties had agreed to extend the CBA, and that the arbitration provision was in effect at the time of Hutton's discharge. In support of its position, Local 74 submitted the affidavit of its president, which asserted that following Local 74's rejection of EMS's offer at the February 19, 1992, bargaining session over a new CBA, the parties had orally agreed to maintain the terms of the expired CBA. In addition, Local 74 pointed to a March 29, 1994, letter sent by EMS to its employees, which stated that "[w]ages and benefits[, including] ... grievance and arbitration procedures ... all continued during the wage freeze [which ended in December 1993]." Finally, Local 74 noted that although its demand for arbitration had been pending since April 1993, it was not until April 25, 1994, the day before the scheduled arbitration, that EMS indicated that it would contest the arbitrability of Hutton's grievance.

Through an affidavit of its counsel, EMS denied that it had agreed to extend the CBA. It acknowledged that the parties had maintained the *status quo* after expiration of the CBA, but stated that this was done only pursuant to their respective obligations under Sections 8(a)(5) and 8(b)(3) of the National Labor Relations Act. In addition, EMS pointed to events that it contended cast doubt on the existence of such an agreement. First, on February 17, 1993, EMS rejected Local 74's request for access to EMS's books, stating that "[t]he union contract expired on March 2, 1992. In any event, there is nothing in the expired contract or as a matter of law which would permit Local 74" to examine the books. Local 74 did not at that time protest this resistance to its request or indicate that the expired CBA had been extended. Second, although the CBA contained a "no-strike" provision in Article XII, Local 74 nonetheless notified EMS on March 25, 1993, of its reservation of the right to strike and sought permission from its international for immediate strike authorization. Finally, Local 74 did in fact picket and strike EMS on May 9, 1994.

In granting summary judgment for EMS, the District Court first observed that "[a]t the expiration of a CBA, arbitration provisions are generally not among those terms that continue pending a bargaining impasse," and that "[a]lthough oral CBAs that can include arbitration provisions are enforceable," "it is important to identify 'conduct manifest-

ing an intention to abide by agreed-upon terms' " (quoting *Local Union 1199 v. Pepsi–Cola General Bottlers, Inc.,* 958 F.2d 1331, 1335 (6th Cir.1992)). Relying primarily on the union's reservation of its right to strike, the District Court concluded that because "[b]lack letter labor law declares that arbitration is the quid pro quo for surrendering the right to strike," "[i]f the union reserved the right to strike and engage in picketing, that must mean the union knew there was no arbitration provision." In addition, the District Court construed EMS's letter to state only that grievance and arbitration provisions were in fact unilaterally maintained during the wage freeze, not that there was any agreement to do so.

Finding no evidence of an agreement to extend the terms of the CBA, and therefore no evidence of an enforceable arbitration provision, the District Court denied Local 74's application for an order compelling arbitration of the grievance and granted EMS's cross-motion for summary judgment. This appeal followed.

### Discussion

■ A party moving for summary judgment must show that there are no genuine issues of material fact to be tried and that it is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). The district court "must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Consarc Corp. v. Marine Midland Bank, N.A.,* 996 F.2d 568, 572 (2d Cir.1993). We review a district court's grant of summary judgment *de novo. See Westinghouse Electric Corp. v. New York City Transit Authority,* 14 F.3d 818, 821 (2d Cir.1994).

■ On appeal, Local 74 contends that the District Court improperly made findings of fact and drew inferences from the evidence in favor of EMS, rather than determining, after resolving all ambiguities and drawing all inferences in favor of the union, whether a genuine factual dispute existed on the question of arbitrability. We agree. Local 74 presented evidence showing an agreement to extend the CBA, including its arbitration provision, and the conflict between this evidence and EMS's evidence offered to refute the existence of such an agreement reflects a question of fact not capable of resolution at the summary judgment stage.

As noted above, in support of its contention that the parties had orally agreed to extend the terms of the CBA, Local 74 submitted the affidavit of its president stating that such an agreement was reached during the February 19, 1992, bargaining session, as well as the March 29, 1994, letter sent by EMS to its employees in which EMS indicated that the arbitration procedures had been in force during the wage freeze. Though the letter may be open to different interpretations, including the one adopted by the District Court, Local 74's evidence, reasonably viewed in favor of the union, reflected an agreement between the parties to maintain the arbitration procedures of the expired CBA.

Moreover, EMS's decision to permit Local 74 to submit the grievance to arbitration further supported the existence of an agreement to maintain the CBA.[1] EMS did not dispute that it not only failed to object initially to arbitration of the grievance, but participated in the arbitral process by agreeing on the arbitrator as well as the date, time, and place of arbitration. *See United Paperworkers International Union, AFL–CIO v. Wells Badger Industries, Inc.,* 835 F.2d 701, 703 (7th Cir.1987) (fact that employer joined un-

---

1. Local 74 also claims that EMS has waived its right to contest the arbitrability of the grievance because EMS failed to move in state court within 20 days of receiving notice to stay the arbitration, pursuant to New York CPLR § 7503(c). However, the fact that EMS did not move in state court within the prescribed time limit does not act as a waiver of its right to assert that the grievance is not arbitrable. In the first place, Section 7503(c) is not controlling because the

labor arbitration at issue is governed by federal law. *See Stotter Division of Graduate Plastics Co., Inc. v. District 65, United Auto Workers, AFL–CIO,* 991 F.2d 997, 1000–01 (2d Cir.1993). In the second place, even under Section 7503(c), a party cannot waive a claim that there is no CBA in existence requiring arbitration of the dispute. *See Matter of Matarasso v. Continental Casualty Co.,* 56 N.Y.2d 264, 451 N.Y.S.2d 703, 436 N.E.2d 1305 (1982).

ion in selecting arbitrator and agreeing on date for arbitrating grievance supported finding that employer intended arbitration provision in expired CBA to continue).

Therefore, without expressing any views regarding the plausibility of the alleged agreement to extend the CBA or the strength and credibility of Local 74's evidence, we conclude that the union clearly raised issues of fact as to whether the arbitration provision of the CBA continued to be binding on EMS.

The District Court relied heavily on EMS's evidence, particularly with respect to the union's reservation of its right to strike. However, this evidence merely contributes to the factual dispute over whether there was an agreement to maintain the arbitration provision. In any event, in concluding that Local 74's resort to ultimate economic weapons was incompatible with extension of the CBA, the District Court did not inquire into whether Local 74's reservation of its right to strike would have violated the no-strike provision in Article XII of the expired CBA. Although arbitration may be the *quid pro quo* for no-strike and no-lockout clauses, it is possible that Article XII, which prohibits all strikes for "any reason whatever," nevertheless was not intended to encompass strikes over non-arbitrable subjects or strikes in support of the union's bargaining position over terms to be included in the new CBA. *See United Steelworkers of America, AFL–CIO v. Fort Pitt Steel Casting Division–Conval–Penn Inc.*, 635 F.2d 1071, 1077 (3d Cir.1980); *Delaware Coca–Cola Bottling Co. v. General Teamster Local 326*, 624 F.2d 1182, 1187 (3d Cir.1980). Article XI of the expired CBA defines arbitrable grievances as claims that the union or employer "has violated an express provision of this agreement," and thus does not appear to encompass disputes over negotiation of a new contract. Though we do not resolve this issue here, the inability of Local 74 to arbitrate the subjects over which it was striking would undermine the conclusion that Local 74's strike was a repudiation of the terms of the CBA.

### Conclusion

For the foregoing reasons, the judgment of the District Court is vacated, and the matter is remanded for further proceedings. No costs.