ALISON J. NATHAN, District Judge:
*570 Before the Court is Respondent 1199SEIU United HealthCare Workers East's (the "Union") motion to dismiss Petitioner Rite Aid of New York, Inc.'s ("Rite Aid") petition to stay an arbitration. For the following reasons, the Court grants the Union's motion to dismiss.
I. Background
Respondent 1199SEIU United HealthCare Workers East is a labor organization as defined in the National Labor Relations Act ("NLRA"), and Petitioner Rite Aid is an employer within the meaning of that Act. See Mot. at 1 (Dkt No. 10); Belovin Decl. ¶¶ 4, 6, 9 (Dkt No. 11); Petition ¶ 3 (Dkt No. 1). The two parties have entered into three agreements that are relevant to the current dispute. The first agreement is the 2009-15 Memorandum of Agreement ("MOA"), which established the parties' most recent collective bargaining agreement ("CBA"). Belovin Decl. Ex. 4 (Dkt No. 11-4); Mot. at 2; Opp. at 4 (Dkt No. 12). That agreement expired in April 2015. Belovin Decl. Ex. 4 at 16; Hinkle Decl. ¶ 4 (Dkt No. 14). On May 5, 2015, the parties entered into an agreement extending the CBA (the "Extension Agreement"). Hinkle Decl. Ex. A (Dkt No. 14-1). The agreement had no specific duration, but it permitted either party to terminate the agreement with ten days' written notice. Hinkle Decl. Ex. A; Opp. at 4. In July 2016, Rite Aid gave the Union notice that it was terminating the extension agreement. Hinkle Decl. ¶ 7. The parties subsequently implemented a final bargaining proposal ("Final Offer") on September 14, 2016, which remains in effect today. Hinkle Decl. ¶ 8; Hinkle Ex. B (Dkt No. 14-2).
The 2009-15 MOA required Rite Aid to make certain contributions to the 1199SEIU/Employer Child Care Fund. Belovin Decl. ¶ 9; Petition ¶ 4. A dispute eventually arose regarding the amount Rite Aid was required to contribute to the Fund. From October 30, 2009 through September 17, 2014, Rite Aid remitted contributions to the Fund at a rate of 0.4% of the employer's gross payroll. Petition ¶¶ 4, 8; Hinkle Decl. ¶ 3, 11. The Union, however, contends that the contribution rate should have been 0.5%. Mot. at 2; Hinkle Decl. ¶ 11. In September 2014, the Union informed Rite Aid that the proper contribution rate was 0.5%. Hinkle Decl. ¶ 11. Starting in October 2014, Rite Aid began remitting contributions at that rate. Hinkle Decl. ¶ 11; Opp. at 1. For several years, the Union did not take any further action concerning these contributions, such as seeking reimbursement for the allegedly underfunded contributions that were made before October 2014. Hinkle Decl. ¶ 11; Opp. at 6-7.
In 2017, the Union served a "Notice of Intention to Arbitrate" on Rite Aid related to the 1199SEIU/Employer Child Care Fund contributions. The Notice is dated February 8, 2017. Belovin Decl. Ex. 5 (Dkt No. 11-5). The Union claims that it sent the Notice to Rite Aid on February 9, 2017, see Mot. at 2, but Rite Aid contends that it did not receive the Notice until February 10, 2017, see Opp. at 7. See also Belovin Decl. ¶¶ 13-14; Belovin Ex. 6 (Dkt No. 11-6). The Notice stated, in part:
Pursuant to the terms of the Collective Bargaining Agreement between 1199SEIU United Healthcare Workers East and Rite Aid, this is to notify Rite Aid of our intention to conduct an arbitration against Rite Aid for failure to remit contributions to the:
1199SEIU/Employer Child Care Fund *571 due in February 2011 - August 2014 and November 2016 - January 2017, on behalf of employees at Rite Aid.
Belovin Decl. Ex. 5. The Notice also stated:
PLEASE TAKE NOTE that pursuant to Section 7503 of the CPLR, unless within twenty days after service of the Notice of Intention to Arbitrate Rite Aid moves to stay the arbitration, Rite Aid shall be barred from putting into issue the making of said agreement, the failure to comply with it, and from asserting in court the bar of a limitation of time.
Id. The Union later dropped its claim for the second time period, November 2016 to January 2017. Mot. at 3 n.3.
In a Notice of Hearing dated February 17, 2017, the Union notified Rite Aid that an arbitration hearing was scheduled for February 28, 2017. Mendelson Decl. Ex. B (Dkt No. 13). On February 23, Rite Aid asked the Union to adjourn the arbitration hearing, but the Union responded by telling Rite Aid to ask the arbitrator. Mendelson Decl. ¶ 5. Accordingly, counsel for Rite Aid emailed the arbitrator that same day to request an adjournment. Mendelson Decl. ¶ 6. In that email, counsel for Rite Aid represented that the reason for the adjournment was that counsel was going to be "out-of-town." Mendelson Decl. Ex. C; Belovin Decl. Ex. 7 (Dkt No. 11-7). Rite Aid's counsel also wrote that Rite Aid would "be raising a statute of limitations defense" and that the company recognized that "under CPRL 7503(c), which is referenced in the Union's Notice of Intention to Arbitrate ..., the Company must raise that defense by filing an action in court to enjoin the arbitration." Id. The arbitrator granted the request for an adjournment, and the hearing was rescheduled for March 30, 2017. Belovin Decl. Ex. 7.
According to Rite Aid, it engaged in settlement negotiations with the Union from February 23 through March 5. Opp. at 9; Mendelson Decl. ¶ 7. Rite Aid represents that these "discussions concluded unsuccessfully on March 5." Opp. at 9.
On March 6, 2017 - either twenty-four (Rite Aid's view) or twenty-five (the Union's view) days after Rite Aid received the Notice of Intention to Arbitrate - Rite Aid filed a petition with this Court to enjoin the March 30 arbitration hearing. Dkt No. 1. That petition contends that the Union's cause of action is barred by the statute of limitations and the doctrine of laches. Petition ¶¶ 34-36. Specifically, Rite Aid contends that the Union "seeks to arbitrate a claim that the Company failed to implement an increase in the contribution rate to the Union's Child Care Fund 7.5 years ago," see Opp. at 1, and that this claim is barred by a six year statute of limitations, Petition ¶ 34.
In response to the petition, the Court ordered the parties to meet and confer to submit a proposed briefing schedule on the petition and to discuss whether discovery was necessary. Dkt No. 4. The Court also ordered the Union to state whether it consented to a stay of arbitration. Id. On March 8, 2017, instead of providing a joint proposed briefing schedule, the parties provided competing letters. Dkt No. 5, 7. Rite Aid suggested adopting an "expedited discovery schedule" to resolve purported "material issues of fact in dispute that go to [Rite Aid's] laches defense," followed by a two to three week briefing schedule for the underlying petition. Dkt No. 5. The Union's letter contended that Rite Aid's petition to enjoin the arbitration was untimely, and the Union indicated its intent to file a motion to dismiss on that ground. Dkt No. 7. The Union therefore suggested bifurcating the case, with the Court first resolving the Union's motion to dismiss.
*572 Id. If the Court denied the motion to dismiss, then the Union agreed with Rite Aid that discovery and further briefing were warranted. Id.
On March 9, 2017, the Court adopted the Union's proposal and set a briefing schedule for the Union's motion to dismiss, with the understanding that it would address the underlying petition if the motion to dismiss were denied. Dkt No. 8. The Court also stayed the March 30 arbitration pending resolution of the motion to dismiss. Id.
II. Discussion
Rite Aid has filed a petition to stay the arbitration noticed by the Union, arguing that the Union's claims are barred by the statute of limitations and laches. The Union's motion to dismiss this petition raises a single argument, that Rite Aid's petition to enjoin the arbitration should be dismissed as untimely under New York C.P.L.R. § 7503(c). Rite Aid concedes that it filed its petition outside the twenty-day window outlined in N.Y. C.P.L.R. § 7503(c), but the company raises a variety of arguments as to why the Court should nonetheless hear the case on the merits. For the following reasons, the Court agrees with the Union that Rite Aid's petition is untimely and therefore grants the motion to dismiss.
A. Rite Aid's Petition is Untimely Under New York CPLR § 7503
"A party bringing an arbitration has the option under [N.Y. C.P.L.R.] section 7503(c) to ... serve a demand for arbitration or a notice of intent to arbitrate both of which trigger a time limit for bringing a proceeding to stay the arbitration." Pictet Funds (Europe) S.A. v. Emerging Managers Grp, L.P. , No. 14-cv-6854 (SAS), 2014 WL 6766011, at *5 (S.D.N.Y. Dec. 1, 2014) (citing Jonathan Logan, Inc. v. Stillwater Worsted Mills, Inc. , 31 A.D.2d 208, 295 N.Y.S.2d 853 (N.Y. App. Div. 1968) ). Section 7503(c) states, in relevant part:
(c) Notice of intention to arbitrate. A party may serve upon another party a demand for arbitration or a notice of intention to arbitrate, specifying the agreement pursuant to which arbitration is sought and the name and address of the party serving the notice, or of an officer or agent thereof if such party is an association or corporation, and stating that unless the party served applies to stay the arbitration within twenty days after such service he shall thereafter be precluded from objecting that a valid agreement was not made or has not been complied with and from asserting in court the bar of a limitation of time..... An application to stay arbitration must be made by the party served within twenty days after service upon him of the notice or demand, or he shall be so precluded.
N.Y. C.P.L.R. § 7503(c). If a party fails to comply with this provision, courts generally "have no discretion to extend this time period to permit consideration of an untimely application." Matarasso v. Cont'l Cos. Co. , 56 N.Y.2d 264, 451 N.Y.S.2d 703, 436 N.E.2d 1305, 1306 (1982).
This provision bars Rite Aid's petition. Rite Aid does not dispute that § 7503(c) applies in this case. The company asserts a statute of limitations defense in its petition to stay the arbitration hearing, and § 7503(c) expressly "applies to objections ... based on time limitations." LJL 33rd Street Assocs., LLC v. Pitcairn Props. Inc. , 725 F.3d 184, 191 (2d Cir. 2013).
Because § 7503(c) applies to Rite Aid's objection to the arbitration, Rite Aid was required to file its petition "within twenty days" after being served with the Notice of Intention to Arbitrate.
*573 N.Y. C.P.L.R. § 7503(c). Although the parties dispute exactly when Rite Aid was noticed, Rite Aid's petition did not comply with this time limitation under either parties' view. Rite Aid received the Notice on either February 9, 2017 (the Union's positon) or February 10, 2017 (Rite Aid's position). See Mot. at 2; Opp. at 7; Belovin Decl. Ex. 5; Belovin Decl. Ex. 6. But Rite Aid did not file the instant petition until March 6, 2017, which is either twenty-four or twenty-five days after it received the Notice of Intention to Arbitrate. Dkt No. 1. Because Rite Aid failed to "appl[y] to stay the arbitration within twenty days after such service," the company is "precluded ... from asserting in court the bar of a limitation of time." N.Y. C.P.L.R. § 7503(c).
B. None of Rite Aid's Arguments as to Why § 7503 Should Not Apply Are Persuasive
Rite Aid does not dispute that it filed its petition more than twenty days after receiving the Notice of Intention to Arbitrate. See Opp. at 2. The company, however, raises five arguments as to why the Court nonetheless should consider its petition on its merits. The Court finds none of Rite Aid's arguments persuasive.
First, Rite Aid contends that § 7503 has been preempted by federal law. Opp. at 9, 21-22. In making this argument, Rite Aid relies on a statement from a footnote in a 1995 Second Circuit Court of Appeals opinion. See Opp. at 9 (citing Local 74, Serv. Emps. Int'l Union, AFL-CIO v. Ecclesiastical Maintenance Servs., Inc. , 55 F.3d 105, 108 n.1 (2d Cir. 1995) ). In that case, the Second Circuit held that a union had raised a genuine issue of material fact regarding whether an oral agreement to extend the terms of an expired CBA had been entered, thereby overturning a district court decision that a grievance was non-arbitrable because there was no agreement to arbitrate in effect at the relevant time. Local 74 , 55 F.3d at 106. In a footnote, the Second Circuit rejected the union's argument that the employer had waived the right to contest the arbitration in federal court, reasoning both that " Section 7503(c) is not controlling because the labor arbitration at issue is governed by federal law" and because "even under Section 7503(c), a party cannot waive a claim that there is no CBA in existence requiring arbitration of the dispute." Id. at 108 n.1. The Court is not persuaded that this footnote dicta controls. Notwithstanding the Second Circuit's statement about § 7503 not being "controlling" in federal cases, several subsequent cases directly confronted with the issue have expressly rejected the preemption argument advanced here. These courts have reasoned either that the Labor Management Relations Act ("LMRA") has only preempted substantive state law (as opposed to "state procedural remed[ies]"), see Amalgamated Local Union Number 55 v. Fibron Prods., Inc. , 976 F.Supp. 192, 197-98 (W.D.N.Y. 1997), or because there is no conflict between § 7503 and federal law, see Concourse Village, Inc. v. Serv. Emps. 23BJ North Health Ben. Fund , No. 11 Civ. 7824(KBF), 2012 WL 5462662, at *4 (S.D.N.Y. Nov. 8, 2012) ; New York City Dist. Counsel Pension Fund. v. S & G Flooring, Inc. , No. 08 Civ. 3735, 2009 WL 1835949, at *2 (S.D.N.Y. June 23, 2009) ; Motion Picture Projectionists v. RKO Century Warner Theatres, Inc. , No. 97 Civ. 4758(RPP), 1998 WL 477966, at *7 (S.D.N.Y. Aug. 14, 1998) (rejecting plaintiff's preemption argument because " CPLR § 7503(c) is not in conflict with, but rather supports, the national labor policy favoring a quick resolution of labor disputes"); Matter of Propulsora Ixtapa Sur, S.A. De C V. (Omni Hotels Franchising Corp.) , 211 A.D.2d 546, 548, 621 N.Y.S.2d 569 (N.Y. App. Div. 1995)
*574 ("Equally devoid of merit is petitioner's contention ... that the twenty-day limitations period set forth in CPLR 7503 (c) is pre-empted by the Federal Arbitration Act (the FAA). Federal law in the field of arbitration pre-empts State law only to the extent that the two bodies of law conflict... [and] no conflict exists."); see also Local 802, Assoc. Musicians of Greater New York v. The Parker Meridien Hotel , 145 F.3d 85, 88 (2d Cir. 1998) ("Because Congress did not provide a statute of limitations for suits brought under § 301 [of the LMRA], this Court determines the statute of limitations for the federal cause of action by looking to the most appropriate state statute of limitations."). The Court is persuaded that there is no preemption problem because there is no conflict between § 7503(c)'s twenty-day limitations period and federal law, as federal law is silent on the issue. See Omni Hotels Franchising Corp. , 211 A.D.2d at 548, 621 N.Y.S.2d 569.
Second, Rite Aid contends that the Union cannot rely on § 7503(c)'s twenty-day bar because the Union itself violated § 7503(c). Opp. at 9-10. Under New York law, a failure to comply with § 7503(c), for example, by not specifying the agreement to which arbitration is sought or failing to provide a warning about the twenty-day limitation, renders the twenty-day limitation period inapplicable. See Cooper v. Bruckner , 21 A.D.3d 758, 759-60, 801 N.Y.S.2d 19 (N.Y. App. Div. 2005). Attempting to avail itself of that principle, Rite Aid contends that the Union failed to comply with § 7503(c)'s requirement that a party serving a notice of intention to arbitrate "specify[ ] the agreement pursuant to which arbitration is sought." Opp. at 9-10. Specifically, Rite Aid objects that the Union's Notice of Intention to Arbitrate does not specify whether the arbitration was brought pursuant to the 2009-15 MOA, the 2015-16 Extension Agreement, or the Final Offer. Opp. at 10.
The Court rejects this argument. Rite Aid's contention ignores the nature of collective bargaining agreements. "[A] collective bargaining agreement is not limited solely to the specific provisions of the basic labor contract formally executed by the parties, but it may also include, among other things, written side agreements and oral understandings entered into by the parties to the collective bargaining relationship." Rollins v. Community Hosp. of San Bernardino , 839 F.3d 1181, 1186 (9th Cir. 2016) (citation omitted); see also Local 74 , 55 F.3d 105 (concluding that there was a genuine issue of material fact as to whether the CBA had been extended by a subsequent oral agreement). The three agreements identified by Rite Aid are all part of the same extended collective bargaining agreement: the 2009-15 MOA laid out the basic terms of the agreement, and the 2015-16 Extension Agreement and Final Offer extended the duration of that agreement. As the Union argues, all three "documents memorialize a single course of dealing between the parties," so they are properly treated "as a single agreement." Reply at 5 (Dkt No. 17). Additionally, even ignoring the fact that all three agreements are properly treated as one CBA, Rite Aid's argument overlooks that the Notice of Intention to Arbitrate, as a whole, placed Rite Aid on sufficient notice of the relevant arbitration agreement at issue by specifying the contributions in dispute (i.e. , contributions to the Child Care Fund) and the relevant time period. See Belovin Decl. Ex. 5.
Third, Rite Aid urges the Court to treat the Notice of Hearing, which was dated February 17, as the relevant document that triggers § 7503(c)'s twenty-day limitations period, rather than the February 8 Notice of Intention to Arbitrate. Opp. at *575 11-12. Rite Aid's argument proceeds as follows. According to Rite Aid, the February 17 Notice of Hearing materially altered the Union's claim because the original Notice of Intention to Arbitrate sought arbitration over contributions made from "February 2011 - August 2014" and "November 2016 - January 2017," while the Notice of Hearing sought arbitration only for contributions from February 2011 through August 2014. Id. According to Rite Aid, because the Union dropped the second time period, the Notice of Hearing "nullf[ied] the February 8 Notice of Intention to Arbitrate," and the February 17 Notice of Hearing "effectively superseded the February 8 Notice of Intention to Arbitrate." Opp. at 12. Rite Aid accordingly urges the Court to consider February 17 as the starting date for § 7503(c)'s twenty-day limitation, an argument that, if true, would render Rite Aid's petition timely. Id.
There are two problems with Rite Aid's argument. First, Rite Aid cites no authority for the proposition that a subsequent notice of hearing can supersede the prior notice of intention to arbitrate for purposes of triggering § 7503(c)'s limitations period. See Opp. at 11-12. And contrary to Rite Aid's argument, the text of § 7503(c) applies to a "Notice of intention to arbitrate," not a notice of hearing. Second, Rite Aid is simply incorrect in asserting that the February 17 Notice of Hearing "changed the claim that the Union asserted in the February 8 Notice." Opp. at 11. The Notice of Intention to Arbitrate stated that it was seeking "arbitration against Rite Aid for failure to remit contributions" to a particular fund for the time periods of "February 2011 - August 2014 and November 2016 - January 2017." Belovin Decl. Ex. 5. The Union subsequently decided to drop the claim for the second time period. Mot. at 3 n.3; Opp. at 12. But the fact that the Union decided to drop one of the two time periods does not fundamentally alter the claim. The basic elements of the dispute remained the same: the Union sought to arbitrate the same contributions, to the same Fund, under the same collective bargaining agreement, but simply for a shorter time period than originally identified. In fact, the Union's decision to drop the second time period actually worked in Rite Aid's favor, as it reduced the company's potential liability. Because no new claims or additional time periods were added to the Notice of Hearing, Rite Aid's contention that the Notice of Hearing somehow fundamentally changed the underlying claim is unavailing.
Fourth, Rite Aid contends that § 7503(c)'s twenty-day deadline should be equitably tolled. Opp. at 12-21. But this argument suffers from multiple flaws. As an initial matter, it is not clear that equitable tolling is even permitted under § 7503(c). The New York Court of Appeals has stated that "courts have no discretion to extend" § 7503(c)'s twenty-day time period. Matarasso , 451 N.Y.S.2d 703, 436 N.E.2d at 1306 ; see also Liberty Mut. Ins. Co. v. Mohabir , 115 A.D.3d 413, 414, 982 N.Y.S.2d 9 (N.Y. App. Div. 2014) ("The 20-day time limit of CPLR 7503 is construed as a period of limitation, and the courts have no discretion to waive or extend the statutory period." (citations omitted) ). Although New York has recognized a few exceptions to § 7503(c)'s twenty-day limitation, for example, when a party objects that there was no arbitration agreement in the first place, see Matarasso , 451 N.Y.S.2d 703, 436 N.E.2d at 1306, Rite Aid identifies no cases, and the Court has found none, applying the doctrine of equitable tolling to § 7503(c). See Opp. at 12-21.
Even assuming the Court had discretion to apply the doctrine of equitable tolling, it would find tolling unwarranted under the facts of this case. The thrust of Rite Aid's *576 equitable tolling argument is that it would be unfair to penalize them for failing to abide by § 7503(c)'s twenty-day deadline when the Union itself was derelict in bringing its claim in the first place. See Opp. at 18 ("There is an incredible irony in the Union alleging that the Company is time-barred from raising the Union's nearly 5 year delay in notifying the Company of an increased contribution rate and its 7.5 year delay before filing for arbitration ..."). But Rite Aid's argument ignores that the text of § 7503(c) itself contemplates this "irony." Under § 7503(c), a failure to file a petition to stay an arbitration does not bar all court challenges to an arbitration, but rather only precludes a party "from objecting that a valid agreement was not made or has not been complied with and from asserting in court the bar of a limitation of time ." N.Y. CPLR § 7503 (emphasis added). In other words, § 7503 expressly envisions the possibility of barring a party from raising a statute of limitations defense on the ground that that moving party itself acted in an untimely fashion.
Rite Aid's other arguments for equitable tolling are unavailing. "[E]quitable tolling is only appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights." Zerilli-Edelglass v. New York City Transit Auth. , 333 F.3d 74, 80 (2d Cir. 2003) (alterations, citations, and quotation marks omitted). To avail itself of this doctrine, Rite Aid must show (1) "that [it] has been pursuing [its] rights diligently" and that (2) "the circumstances that caused [the] litigant's delay are both extraordinary and beyond its control." Menominee Indian Tribe of Wisconsin v. United States , --- U.S. ----, 136 S.Ct. 750, 755-56, 193 L.Ed.2d 652 (2016) (emphasis omitted); see also Zerilli-Edelglass , 333 F.3d at 80-81. Rite Aid has failed to satisfy this standard. Rite Aid was clearly aware of the need to file a court action if it wished to challenge the arbitration on statute of limitations grounds, as it stated as much in its email to the arbitrator seeking an adjournment of the arbitration hearing; in fact, the company even cited N.Y. CPLR § 7503 in that email. Belovin Decl. Ex. 7. Furthermore, in accordance with § 7503, the Union's Notice of Intention to Arbitrate expressly warned Rite Aid to "TAKE NOTICE that pursuant to Section 7503 of the CPLR, unless within twenty days after service of the Notice of Intention to Arbitrate Rite Aid moves to stay the arbitration, Rite Aid shall be barred ... from asserting in court the bar of a limitation of time." Belovin Decl. Ex. 5. These two documents demonstrate that Rite was clearly on notice of the need to comply with § 7503, yet simply failed to file the petition within the twenty-day time period.
The only explanation for Rite Aid's failure to file a timely petition that the Court could discern from the company's briefing is that Rite Aid was attempting to settle the case. According to Rite Aid, settlement negotiations with the Union concluded unsuccessfully on March 5, so Rite Aid filed the petition to stay the arbitration the next day. Opp. at 2, 9. However, "settlement discussions are not the sort of extraordinary circumstance that would trigger the application of equitable tolling," Hooper v. Berryhill , No. 15-CV-6646 (JLC), 2017 WL 927843, at *4 (S.D.N.Y. Mar. 8, 2017) (citation and quotation marks omitted), and the fact that Rite Aid preferred to settle the case without court intervention does not excuse its failure to comply with the applicable limitations period. See also In re Enron Corp. , 419 F.3d 115, 125 (2d Cir. 2005) (holding that the fact that counsel "was distracted by extensive negotiations" with the opposing *577 party did not constitute excusable neglect). Furthermore, although Rite Aid may be correct that the Union did not suffer any prejudice as a result of the company's delay in filing the petition to stay arbitration, see Opp. at 12, 14, "the absence of prejudice to the opposing party is not an independent basis for invoking the doctrine of equitable tolling and sanctioning deviations from established procedures." Menominee Indian Tribe , 136 S.Ct. at 757 n.5 (alteration, citation, and quotation marks omitted).
Fifth, and finally, Rite Aid contends that § 7503(c) does not apply because there is no agreement to arbitrate. Opp. at 20. Under New York law, the twenty-day limitations period of § 7503(c) does not apply to challenges premised on the nonexistence of an arbitration agreement between the parties. Matarasso , 451 N.Y.S.2d 703, 436 N.E.2d at 1306. Rite Aid appears to admit that the 2009-15 MOA contained an agreement to arbitrate. See Opp. at 10; Belovin Decl. Ex. 1 Art. XXXII (Dkt No. 11-1). The company nonetheless argues that the Matarasso exception should apply because, at the time the Union filed its February 2017 Notice of Intention to Arbitrate, the CBA between the two parties had expired. See Opp. at 11-12.
This argument is unpersuasive. "A party's obligation under an arbitration clause survives the expiration of an agreement when the post-expiration action 'infringes a right that accrued or vested under the agreement.' " Kuklachev v. Gelfman , 600 F.Supp.2d 437, 459 n.9 (E.D.N.Y. 2009) (quoting CPR (USA) Inc. v. Spray , 187 F.3d 245, 255 (2d Cir. 1999) ); see also Jillian Mech. Corp. v. United Serv. Workers Union Local 355 , 882 F.Supp.2d 358, 363 (E.D.N.Y. 2012) ("[T]he fact that the CBA is no longer valid and enforceable does not deprive this Court of jurisdiction to determine whether there was a valid agreement to arbitrate this particular dispute."). As the New York Court of Appeals has explained, the Matarasso exception "is inapplicable" when the objecting party "does not assert that the parties never entered into an arbitration agreement," but rather argues "that the contracts containing the agreement to arbitrate expired." Fiveco, Inc. v. Haber , 11 N.Y.3d 140, 863 N.Y.S.2d 391, 893 N.E.2d 807, 809-10 (2008). The Union's Notice of Intention to Arbitrate seeks to arbitrate a dispute over contributions owed from February 2011 - August 2014, a time period during which Rite Aid admits the parties did have a collective bargaining agreement that contained an arbitration agreement. Belovin Decl. Ex. 1 Art. XXXII; Belovin Decl. Ex. 5; Opp. at 11-12. Because the obligations identified in the Union's notice accrued at a time an agreement to arbitrate was in force, Rite Aid cannot validly rely on Matarasso's "no agreement to arbitrate" exception to § 7503(c)'s twenty-day rule.
III. Conclusion
For the aforementioned reasons, the Court agrees with the Union that Rite Aid's petition to stay the arbitration is untimely under N.Y. C.P.L.R. § 7503(c). The Court therefore grants the Union's motion to dismiss.
This resolves Docket Number 9. The Court respectfully requests that the Clerk of the Court close this case.
SO ORDERED.