18-624
*International Brotherhood of Electrical Workers v. Charter Communications, Inc.*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 11th day of October, two thousand nineteen.

PRESENT:    DENNIS JACOBS
            ROBERT D. SACK
            PETER W. HALL

-----------------------------------------------------------------------

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS, AFL-CIO, LOCAL UNION
NO. 3,
            *Petitioner-Appellant,*


            v.                                              No. 18-624


CHARTER COMMUNICATIONS, INC., SUCCESSOR
TO TIME WARNER CABLE OF NEW YORK CITY
LLC,
            *Respondent-Appellee.*

-----------------------------------------------------------------------

FOR APPELLANT:                    JOHN H. BYINGTON III, Archer, Byington,
                                  Glennon & Levine LLP, Melville, NY.

FOR APPELLEE:                     DANIEL S. KIRSCHBAUM (Kenneth A. Margolis,
                                  *on the brief*), Kauff McGuire & Margolis LLP,
                                  New York, NY.

1

Appeal from a judgment of the United States District Court for the Eastern District of New York (Weinstein, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the District Court is **AFFIRMED**.

International Brotherhood of Electrical Workers, AFL-CIO, Local Union No. 3 ("Local 3") appeals from a memorandum and order of the United States District Court for the Eastern District of New York (Weinstein, *J.*), entered on February 16, 2018, granting summary judgment in favor of Charter Communications, Inc. ("Charter") and ordering the parties to proceed to arbitration. We assume the parties' familiarity with the facts, record of prior proceedings, and arguments on appeal, which we reference only as necessary to explain our decision to affirm.

## I.

The following facts are undisputed.

### A. The Collective Bargaining Agreement

Local 3 and Charter were parties to a collective bargaining agreement ("CBA") from April 1, 2009 through March 31, 2013. That CBA contained a no-strike clause providing that "[t]here shall be no cessation or stoppage of work, service or employment, on the part of, or at the instance of either party, during the term of this Agreement." J. App. 372. The CBA also included a dispute resolution provision defining the term "grievance" and providing for the use of final binding arbitration to resolve grievances. *Id.* at 369. Additionally, the CBA included location-specific "riders" addressing how various locations would handle issues such as standby procedures and sick days. *Id.* at 139. That CBA expired on March 31, 2013.

2

On March 28, 2013, the parties signed a Memorandum of Agreement ("MOA"), agreeing to extend the CBA, with some modifications, through March 31, 2017.[1] None of the changes provided for in the MOA applied to the no-strike provision or the grievance and arbitration provisions. A week later, Local 3 members unanimously ratified the MOA.

While drafting the successor CBA, however, Local 3 and Charter disagreed over whether the new agreement would include the riders and the electrical engineering degree bonus clause of the prior CBA. Between July 2013 and March 2014, Local 3 and Charter negotiated over those terms.[2] Because they failed to reach agreement on those terms, Local 3 ultimately refused to sign a successor CBA.

## B. Acceptance of the Successor CBA

Meanwhile, following ratification of the MOA in April 2013, Charter implemented all of the increased wages and benefits laid out in the MOA, deducting and transmitting union dues to Local 3 pursuant to the CBA. Additionally, Local 3 continued to use the grievance and arbitration procedures laid out in the CBA, demanding fifteen arbitration proceedings between March 7, 2014 and March 10, 2015. On each occasion, Local 3 served a "Notice of Intent To Arbitrate" on Charter, seeking arbitration "under the terms of an agreement between the parties" and "pursuant to a collective bargaining agreement existing between [Charter] and Local 3." *Id.* at 399–413. About half of these notices framed the issue to be

---

[1] The MOA stated that the parties "agree that the changes which are summarized below were agreed upon relative to the Collective Bargaining Agreement . . . which will expire on March 31, 2013 and that the full text of the applicable changes will be incorporated in a new Collective Bargaining Agreement which shall become effective, upon ratification by the Union membership, scheduled for April 4, 2013." J. App. 391.

[2] Neither the no-strike clause nor the grievance and arbitration provisions were discussed during those negotiations.

arbitrated as "[w]hether the Employer violated the CBA . . . ." *Id.* at 407, 408, 412; *see also id.* at 399, 401, 409, 411, 413. In arbitration decisions awarded between January and April 2015, arbitrators cited and relied on the grievance and arbitration section of the CBA in concluding that the disputes were properly before them for arbitration.

## C. NLRB Adjudication of Dispute Over Riders and Engineering Degree Clause

Charter filed an NLRB charge in March 2014, alleging that Local 3's refusal to sign the draft CBA was an unfair labor practice. In April 2015, the ALJ, following a trial, ruled in favor of Local 3. The NLRB adopted the ALJ's decision in October 2015.

The NLRB determined that Local 3 did not commit an unfair labor practice because there was no meeting of the minds on whether the riders and the electrical engineering clause would be part of the successor CBA, and the terms of the MOA were "ambiguous as to these two issues." *Id.* at 145; *see also id.* at 144–45. Further, the NLRB stated that because the parties had "different understandings and beliefs as to [the riders] issue," "there was no meeting of the minds and no contract." *Id.* at 146. The NLRB reached that conclusion despite noting that "[n]either party took the position that no contract was in effect," and, indeed, that the parties were then "arbitrating the claims of [Charter] pertaining to the events complained of, under the arbitration clause of the contract." *Id.* at 144. The NLRB specifically noted Local 3's position "that a meeting of the minds ha[d] been established that the successor agreement would include" the two disputed terms. *Id.* at 147.

## D. March 2017 Strike and District Court Decision Under Review

Local 3 went on strike from March 28 to March 31, 2017. Charter then made a demand for arbitration alleging a violation of the no-strike provision of the CBA. In this

4

action, Local 3 asserts that it is not bound to arbitrate that alleged violation of the no-strike clause. The District Court disagreed, reasoning that Local 3 members are bound by the no-strike clause and grievance and arbitration provisions in the successor CBA because "Local 3's conduct manifested an intent to be bound" by those provisions. Sp. App. 10.

## II.

"We review *de novo* the district court's grant of summary judgment, drawing all factual inferences in favor of the non-moving party." *Sousa v. Marquez*, 702 F.3d 124, 127 (2d Cir. 2012) (internal quotation marks omitted). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(a)).

## III.

On appeal, Local 3 principally argues that the 2015 NLRB decision finding "no meeting of the minds and no contract" has preclusive effect, foreclosing the District Court's determination that the there was an enforceable agreement as to the no-strike and grievance and arbitration provisions. Local 3 invokes both claim preclusion and issue preclusion. Claim preclusion applies when a party attempts to "relitigat[e] issues that were or could have been raised" in a prior action "between the same parties over the same cause of action" that resulted in a "final judgment on the merits," "[p]rovided the parties have had a full and fair opportunity to litigate the matter." *Channer v. Dep't of Homeland Sec.*, 527 F.3d 275, 279 (2d Cir. 2008) (internal quotation marks omitted).

> [I]ssue preclusion applies only if: (1) the issues in both proceedings are identical,
> (2) the issue in the prior proceeding was actually litigated and actually decided,
> (3) there was full and fair opportunity to litigate in the prior proceeding, and (4)
> the issue previously litigated was necessary to support a valid and final judgment

5

on the merits.

*Local 32B-32J Serv. Emps. Int'l Union, AFL-CIO v. NLRB*, 982 F.2d 845, 849 (2d Cir. 1993) (internal quotation marks omitted).

Neither claim preclusion nor issue preclusion applies here. First, this suit is not an attempt to litigate "the same cause of action" or issues "identical" to those raised in the NLRB proceeding. The issue in this case is whether Local 3 must submit to arbitration of the dispute arising out of the March 2017 strike, whereas the issue in the NLRB proceeding was whether Local 3 violated the NLRA by refusing to sign the draft of the successor CBA. The NLRB proceeding turned on facts about the parties' bargaining history with respect to specific terms not at issue here, whereas this dispute turns on facts about the parties' conduct following the Union's ratification of the MOA. The March 2017 strike, moreover, could not have been raised before the NLRB because it occurred after resolution of the NLRB proceeding. Second, the parties did not have a full and fair opportunity to litigate the contract formation issue before the NLRB because neither party argued that there was no contract in that proceeding. Instead, both parties assumed there was an enforceable successor agreement and urged the ALJ to adopt their respective interpretations of it. Further, when Charter moved to reopen the record to admit evidence that Local 3, by its conduct, "admitted the existence" of a successor CBA, the NLRB denied that motion, reasoning that Local 3's conduct did not bear on the question of whether the parties reached a meeting of the minds on all material terms. J. App. 129 n.1 (internal quotation marks omitted).

Nor is the NLRB's "no contract" conclusion entitled to preclusive effect as a matter of deference. As the Supreme Court has explained,

6

> [a]lthough the Board has occasion to interpret collective-bargaining agreements in the context of unfair labor practice adjudication, the Board is neither the sole nor the primary source of authority in such matters. Arbitrators and courts are still the principal sources of contract interpretation. Section 301 of the Labor Management Relations Act authorizes federal courts to fashion a body of federal law for the enforcement of collective bargaining agreements.

*Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 202–03 (1991) (internal quotation marks and citations omitted). Local 3's attempt to distinguish *Litton* by arguing that the issue here is one of contract formation, not contract interpretation, is unpersuasive. In deciding whether the parties intended to continue to be bound by the arbitration and no-strike terms of the CBA, we are engaged in "fashion[ing] a body of federal law for the enforcement of collective bargaining agreements." *Id.*; *cf. Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto., Aerospace, Agric. Implement Workers of Am., Int'l Union*, 523 U.S. 653, 658 (1998) (explaining that if, "in the course of deciding whether a plaintiff is entitled to relief for the defendant's alleged violation of a contract, the defendant interposes the affirmative defense that the contract was invalid, the court may, consistent with § 301(a), adjudicate that defense.").

Local 3 argues, second, that there was no contract between the parties in March 2017 because a contract is not formed unless there is a meeting of the minds on all material terms, and the NLRB already found that the riders and the electrical engineering degree term were material terms. Even assuming those disputed terms are material terms, Local 3's argument fails because we apply a more flexible standard than the "all material terms" standard applied by the NLRB. *See Am. Fed'n of Television & Radio Artists, AFL-CIO, N.Y. v. Inner City Broad. Corp.*, 748 F.2d 884, 886–87 (2d Cir. 1984) (explaining that in light of national policy encouraging the formation of collective bargaining agreements, "technical rules of contract do

7

not control the question of whether a collective bargaining agreement has been reached"); *Washington Heights-W. Harlem-Inwood Mental Health Council, Inc. v. Dist. 1199, Nat. Union of Hosp. & Health Care Emps., RWDSU, AFL-CIO*, 748 F.2d 105, 107–08 (2d Cir. 1984); *Intermountain Rural Elec. Ass'n*, 309 NLRB 1189, 1192 (1992) ("A collective-bargaining agreement is formed only after a 'meeting of the minds' on all substantive issues and material terms of the contract.").

This case is analogous to *Washington Heights*. In *Washington Heights*, a union and an employer reached agreement on a proposed CBA, signed an MOA, implemented the wage and benefit terms agreed upon by the parties, participated in arbitration proceedings after signing the MOA even though the new CBA was not yet signed, and ultimately failed to agree on a draft of the new CBA. 586 F. Supp. 1251, 1252–53 (S.D.N.Y. 1984), *rev'd*, 748 F.2d 105 (2d Cir. 1984). The parties litigated an unfair labor practice charge based on refusal to sign the new CBA, and the NLRB determined that the refusal to sign the new CBA was not an unfair labor practice due to the parties' lack of agreement on certain matters. *Id.* at 1254. Yet it was undisputed that "labor peace descended in its customarily uncertain fashion, and it was expected that the formalities of contract formulation and execution would follow." *Id.* When employer refused to participate in an arbitration proceeding, asserting that no agreement to arbitrate existed, the union sued to enforce the award. *Id.* at 1253. The district court held for the employer and vacated the award, reasoning that there was no contract following expiration of the original CBA because "there had been no formal meeting of the minds." *Id.* at 106–07.

This Court reversed, reasoning that the emphasis should be on "intention rather than form." *Washington Heights*, 748 F.2d at 107 (internal quotation marks omitted). We rejected

8

the notion that the parties would only be bound by the arbitration provision of an unsigned successor CBA if there was agreement on all material terms. *Id.* at 107–08. Noting that there was no dispute over the arbitration clause, we recognized "the intermediate possibility that the parties did reach an oral understanding on a successor collective bargaining agreement, even though there might not have been a meeting of the minds on all the details of that agreement," such that "the parties at least agreed to be bound by the grievance and arbitration provisions of the [former CBA] while they attempted to reduce their successor agreement to writing." *Id.* at 108. Further, we suggested that it would be inequitable to allow the employer to escape the arbitration provision when it "not only apparently abided by the provisions of the purported agreement for its entire term, but . . . may have also benefited substantially from the mutual assumption that there was an agreement." *Id.*

Similarly, Local 3 benefited from the parties' assumption, which was mutual until the ALJ's decision in 2015, that there was an agreement. There was no dispute over the no-strike and grievance and arbitration provisions. And as the District Court correctly noted, neither the MOA nor the parties' bargaining history indicates that the successor CBA's validity was contingent upon resolution of the disputed terms addressed by the NLRB in 2015. Indeed, the parties' conduct indicates otherwise. As discussed above, the parties in this case participated in arbitration following expiration of the original CBA on the assumption that the CBA was still in effect.

Local 3's effort to distinguish *Washington Heights* is unavailing. Local 3 argues that *Washington Heights* "at best supports only that questions of fact precluded the [district court's] award of summary judgment in favor of [Charter]," focusing on the district court's decision

9

upon this Court's remand. Appellant Br. 44. Following remand, the district court in *Washington Heights* found "an oral understanding on a successor collective bargaining agreement, even if there was not a meeting of the minds on all the details of that accord," such that "[t]he parties had agreed, at least, to be bound by the grievance and arbitration provisions of the contract while reducing the agreement to writing." *Washington Heights*, 608 F. Supp. 395, 396 (S.D.N.Y. 1985). Local 3 appears to argue that whether there was a comparable oral understanding here is a fact question. Appellant Br. 44–45. The district court in *Washington Heights* based its post-remand "oral understanding" finding on the facts described above. 608 F. Supp. at 396. As this case presents analogous facts, *Washington Heights* does not support Local 3's argument that further factual development is necessary.[3]

Next, Local 3 contends that its conduct did not manifest an intent to be bound. Local 3 asserts that it "conducted itself as though there has been no CBA in effect from the moment the ALJ Fish Decision [finding 'no contract'] was issued," effectively conceding that it conducted itself, for the first two years following expiration of the original CBA, on the belief that there *was* an agreement. Appellant Br. 38; *accord id.* at 50. That Local 3 expressed an intent not to be bound by the new CBA following the ALJ's April 2015 ruling does not help Local 3. *See Powell v. Omnicom, BBDO/PHD*, 497 F.3d 124, 129 (2d Cir. 2007) (contract "remains binding even if a party has a change of heart between the time he agreed to the

---

[3] Nor does *Local 74, Serv. Emps. Int'l Union, AFL-CIO v. Ecclesiastical Maint. Servs., Inc.*, 55 F.3d 105 (2d Cir. 1995), preclude granting summary judgment for Charter. In *Local 74*, the parties submitted competing affidavits on the issue of whether they orally agreed to maintain the arbitration term of the expired CBA. *Id.* at 107. We held that summary judgment for the employer was inappropriate because "a genuine factual dispute existed on the question of arbitrability." *Id.* at 108. Here, Local 3 has presented no evidence to refute the evidence of agreement on the arbitration provision, relying merely on the NLRB's legal conclusion that there was "no contract" between the parties.

[contract] and the time those terms are reduced to writing"); *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 445 (2d Cir. 2005) ("It is an elementary principle of contract law that a party's subsequent change of heart will not unmake a bargain already made.").

Finally, Local 3 asserts that "there was no reasoned analysis by the District Court, indeed no analysis at all, regarding the Court's determination that somehow, by implication and surmise, Local 3 and TWC had supposedly agreed to *just* the grievance and arbitration provision and the no-strike provision of the expired CBA, and no other CBA terms." Appellant Br. 8 (emphasis in original). That argument misunderstands the District Court's analysis. The District Court stated, as a matter of judicial restraint, that "[t]he court's decision is limited to a finding that the parties were bound by the no-strike, grievance and arbitration provisions of the new CBA" and "takes no position on the enforceability of the riders or any other sections of the CBA." Sp. App. 11. In other words, the District Court determined that the parties intended to be bound *at least* by the no-strike and grievance and arbitration provisions, which were the only terms of the successor CBA that it was required to reach. We identify no error in the District Court's reasoning.

## IV.

We have considered all of Local 3's remaining arguments and have found them to be without merit. Accordingly, we **AFFIRM** the judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

11